UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DIONTAE CALHOUN,

    Plaintiff,

v.

DR. JONATHAN HOWARD,

    Defendant.

No. 14 C 2631
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Diontae Calhoun brings this action against Defendant Jonathan Howard, M.D., pursuant to 42 U.S.C. § 1983, alleging that Defendant violated his constitutional rights by failing to provide adequate medical care at the Cook County Jail for a serious medical condition. This matter is presently before me on three motions: (1) Defendant's motion for summary judgment, (2) Defendant's motion to strike Plaintiff's response to Defendant's material statement of facts and Plaintiff's statement of additional material facts, and (3) Plaintiff's motion to strike Defendant's answer to Plaintiff's statement of additional facts.

For the following reasons, both motions to strike are granted in part and denied in part. Because there are genuine issues of material fact that can only be resolved at trial, Defendant's motion for summary judgment is denied.

## BACKGROUND

Plaintiff was 24 years old when he was admitted to the Cook County Department of Corrections ("CCDOC") on January 27, 2011. Upon arrival, Plaintiff informed medical personnel at Cermak Health Services that he had a history of mental illness, was suffering from depression, and was currently taking "Psych Meds." Plaintiff was first diagnosed with and treated for mental illness when he was a student in grade school.

During his second day as a pretrial detainee in the CCDOC, Plaintiff was prescribed

1

Thorazine by Dr. David Kelner. Roughly one week later, on February 3, 2011, Dr. Kelner diagnosed Plaintiff with bipolar disorder, a major mental disorder. Dr. David Kelner, Dr. Ralph Menezes, and Dr. Michael Hallberg renewed Plaintiff's Thorazine prescription or adjusted his dosage several times during the following two months.

Due to a disciplinary incident, Plaintiff was moved into disciplinary segregation on March 28, 2011, which is where he resided when Defendant first examined him on March 30, 2011. During this examination, Defendant reviewed Plaintiff's medical file, which included Dr. Kelner's diagnosis of bipolar disorder and orders for Thorazine by Drs. Kelner, Menezes, and Hallberg. The medical file also included a nurse's note stating that, four days earlier, Plaintiff was observed responding to internal stimulus, indicating some psychosis.

During this first examination, Defendant concluded that Plaintiff was "malingering" a mental illness in order to use a mental illness defense such as "not guilty by reason of insanity" ("NGRI") in his criminal case. Defendant counseled Plaintiff "on the difficulties of using an NGRI defense" and "how infrequently it's successful." At the time, Defendant knew that prescribing any psychotropic medication, including Thorazine, would tend to bolster his chances of asserting an NGRI defense.

The National Institute of Mental Health recommends that antipsychotic medications like Thorazine "should be gradually tapered off, never stopped suddenly." Abruptly discontinuing an antipsychotic medication can cause the patient's symptoms to return in full force. Although Defendant considered tapering Plaintiff's prescription of Thorazine gradually, he instead decided to stop Plaintiff's medication all at once.

Two days after Defendant discontinued Plaintiff's prescription for Thorazine, on April 1, 2011, Plaintiff attempted to commit suicide. During each of the five days that followed Plaintiff's failed suicide attempt, Plaintiff made daily requests that his prescription for Thorazine be reinstated. After meeting with Plaintiff on April 6, 2011, Defendant stated that Plaintiff should not be prescribed

Thorazine, should be moved from the mental health clinic to General Population, and should be discharged to inactive mental health housing, meaning Plaintiff would not get mental health treatment on a regular basis.

Plaintiff submitted a Health Service Request Form requesting mental health treatment on April 7, 2011. On that date, Plaintiff "was told that he would be able to follow up at a later date" with a "team psychiatrist." Plaintiff orally requested mental health treatment and medication several times thereafter, including on April 14, 2011 and July 13, 2011. On April 14, 2011, Plaintiff "was informed that he would be scheduled to follow up with a team psychiatrist to discuss the possibility of restarting his medication." This did not happen, and despite filing several requests to receive mental health treatment, Plaintiff's next appointment with a psychiatrist did not occur until Plaintiff saw Defendant on March 5, 2013. During this appointment, Defendant again concluded that Plaintiff was malingering.

Over seven months later, on October 18, 2013, Dr. Jack C. Yen, Staff Psychiatrist with Forensic Clinical Services of the Circuit Court of Cook County, informed Judge William H. Hooks that Plaintiff was "currently not prescribed any psychotropic medications," and that, in Dr. Yen's opinion, Plaintiff was legally sane at the time of the alleged criminal offense. Less than four months later, on January 30, 2014, another doctor reinstated Plaintiff's prescription for Thorazine and moved him back onto the mental health roster and mental health housing for regular mental health treatment.

On March 11, 2014, Defendant examined Plaintiff and renewed his prescription for Thorazine. On April 6, 2014, approximately two months after he was restored to the mental health roster, Plaintiff signed the Complaint in this action and submitted it to the jail authorities for filing with the Court.

**LEGAL STANDARD**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

3

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

I consider the record in the light most favorable to the non-moving party, and I draw all reasonable inferences in the non-movant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). I will accept the non-moving party's version of any disputed fact, however, only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## DISCUSSION

**I.      Defendant's Motion to Strike under Local Rule ("LR") 56.1**

Defendant and Plaintiff have both filed motions to strike under LR 56.1. Both parties argue that their counterpart has failed to comply with LR 56.1(b) by failing to properly cite to the record and by including additional information and alleging additional facts that should be reserved for their own statement of additional facts. Both parties also argue that several of their counterpart's statements of additional facts should be stricken because they mischaracterize the evidence.

The district court may rigorously enforce compliance with LR 56.1. *See, e.g., Stevo v.*

*Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings") (citing *Ammons v. Aramark Uniform Serv., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004).

Although both parties have failed to comply with LR 56.1 in several instances, their violations are low in number and far from egregious. Accordingly, I decline to strike either party's filings in their entirety, as both parties urge. To the extent that both parties have presented evidence in compliance with Local Rule 56.1, I will consider it.

Both Plaintiff's motion to strike and Defendant's motion to strike are therefore granted in part and denied in part.

## II. Statute of Limitations

Defendant argues that Plaintiff's claim should be dismissed because it is barred by Illinois' two-year statute of limitations for personal injury claims. *See* 735 Ill. Comp. Stat. Ann. 5/13-202; *see also Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005).

This argument fails. As late as March 5, 2013, Defendant diagnosed Plaintiff as malingering and refused to provide him with his requested medication. This date clearly falls within the two-year statute of limitations period because Plaintiff's complaint was deemed to be filed on April 6, 2014.[1] Because Plaintiff's claim is a "continuing violation," every other alleged act of deliberate indifference in this case, some of which occurred more than two years before Plaintiff's complaint was filed, can be considered by the court.

A constitutional violation arising out of a defendant's deliberate indifference to a

---

[1] The "prison mailbox rule" provides that *pro se* prisoners, who must rely on prison authorities to deliver their papers to the courthouse for filing, are deemed to have filed their papers on the date they deliver them to those authorities. *Houston v. Lack*, 487 U.S. 266, 276 (1988) (adopting "prison mailbox rule" and applying it to federal notice of appeal); *Ray v. Clements*, 700 F.3d 993, 1004 (7th Cir. 2012) (applying rule to postconviction filing).

5

prisoner's serious medical needs is a "continuing violation," and thus can accrue for as long as a defendant knows about a prisoner's serious medical condition, has the power to provide treatment, and yet withholds treatment. *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001); *Jervis v. Mitcheff*, 258 Fed.Appx. 3, 5–6 (7th Cir. 2007) ("Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released."). When the violation is "continuing," a plaintiff can reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct. *Heard*, 253 F.3d at 319. To that end, it does not matter whether Plaintiff waited more than two years after first seeing Defendant before suing. *Jervis*, 258 Fed. Appx. at 5-6.

Because Defendant's alleged deliberate indifference occurred over a time period that, in part, falls within the statute of limitations period, Plaintiff's claim is not barred by the statute of limitations and all of the alleged misconduct—beginning with Defendant's March 30, 2011 examination and diagnosis—can be considered on Defendant's summary judgment motion on the merits.

**III.     Defendant's Motion for Summary Judgment on the Merits**

The Eighth Amendment's prohibition against cruel and unusual punishment extends to pretrial detainees under the Due Process Clause of the Fourteenth Amendment. *Smith v. Hallberg*, No. 11 C 0188, 2012 WL 4461704, at *8 (N.D. Ill. Sept. 25, 2012) (citing *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007)); *see also Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Claims of deliberate indifference to a serious medical need of a pretrial detainee under the Fourteenth Amendment uses the same standard for deliberate indifference to a serious medical need under the Eighth Amendment. *Id.*

A claim of deliberate indifference includes both an objective and subjective element. *See*

*Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). As to medical care, "the objective element requires that the inmate's medical need be sufficiently serious" to implicate the Constitution. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if it has been diagnosed by a physician as mandating treatment or it is so obvious that even a lay person would recognize the necessity of medical treatment. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). The objective element is not at issue here because Plaintiff's mental health issues, which include his suicide attempt, have already been recognized by the courts to be an objectively serious medical condition. *See Sanville v. McCaughtry*, 266 F.3d 724, 733–4 (7th Cir. 2001).

The subjective element of the deliberate indifference standard requires that the prison official act with sufficiently culpable state of mind, "something akin to criminal recklessness." *Norfleet v. Webster*, 439 F.3d 392, 397 (7th Cir. 2006). The negligent or inadvertent failure to provide adequate medical care is not actionable under 42 U.S.C. § 1983 because such a failure is not an "unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind." *Estelle*, 429 U.S. at 106. To prove the subjective element, a plaintiff must prove that the state actor's decision was "such a substantial departure from accepted professional judgment, practice or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998). (internal quotes and citations omitted).

Although medical negligence is insufficient to demonstrate deliberate indifference, a prisoner is not required to prove that the prison official "intended, hoped for, or desired the harm that transpired." *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir.1996). Instead, it is sufficient if the prisoner demonstrates that the prison official actually knew of a substantial risk of harm to the prisoner and acted or failed to act in disregard to that risk. *See Walker*, 293 F.3d at 1037. An inmate can demonstrate that a prison official knew of a substantial risk of harm if the fact of that risk is obvious. *Id.* The court examines the totality of the medical care provided and isolated incidents of delay do not

rise to the level of deliberate indifference. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir.2000); *Gutierrez v. Peters*, 111 F.3d at 1374–75.

Here, Defendant's motion for summary judgment fails because a reasonable trier of fact could conclude that Defendant was subjectively aware of Plaintiff's serious medical condition and either knowingly or recklessly disregarded it. *See Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). This conclusion would be a reasonable one here because Plaintiff explicitly told Defendant that he was experiencing suicidal thoughts and Defendant was aware that at least three other doctors had already prescribed Plaintiff with Thorazine in the previous two months.

Defendant argues that Plaintiff cannot show subjective awareness because Defendant's medical conclusion was that Plaintiff was malingering – *i.e.*, pretending or exaggerating his illness—and this official medical diagnosis ends the inquiry. A jury, however, is not required to accept Defendant's conclusion. *See Hayes*, 546 F.3d at 524 (noting that trier of fact might or might not believe defendant's explanation of his conduct). Subjective awareness of a substantial risk of serious harm can be and often is proven through inferences from circumstantial evidence, even if the defendant professes ignorance of the risk, *Farmer v. Brennan*, 511 U.S. 825, 842 (1994), and the same is true for proof of deliberate indifference. The Seventh Circuit recognizes that few if any medical professionals will confess to being deliberately indifferent to detainees under their care. As a result, both "[s]ubjective awareness and deliberate indifference [to a serious medical need] normally can be proved only with circumstantial evidence." *Hayes*, 546 F.3d at 524.

The circumstantial evidence in this case is more than sufficient to demonstrate genuine issues of material fact about Defendant's awareness and disregard of Plaintiff's serious medical needs. First, Defendant knew that three psychiatrists with significantly more experience had prescribed Thorazine for Plaintiff *within the previous two months*, yet on March 30, 2011, Defendant overrode their orders and terminated the prescription immediately after his first examination of Plaintiff. Although a difference of opinion between two physicians does not alone establish a

constitutional injury, such a difference of opinion can, together with other evidence, raise a question of fact regarding a defendant's deliberate indifference.

Second, a jury could reasonably conclude that Defendant consciously disregarded the risk of exacerbating the symptoms of Plaintiff's mental illness when he abruptly withdrew Thorazine from Plaintiff without either tapering the dosage gradually or monitoring Plaintiff's condition. *See King v. Kramer*, 680 F.3d 1013, 1015-16 (7th Cir. 2012) (holding that county could be liable for policies enabling off-site physician to order pretrial detainee to be rapidly weaned off anti-anxiety medication over three-day period without monitoring).

Third, during his very first examination of Plaintiff, Defendant lectured him on the "difficulties" of prevailing on an NGRI legal defense in Plaintiff's criminal case. Knowing that prescribing a psychotropic medication like Thorazine "tends to bolster a claim of mental illness," Defendant discontinued Plaintiff's prescription for Thorazine. A jury could reasonably conclude that Defendant was more concerned with thwarting Plaintiff's defense in his criminal case than with ensuring he received minimally adequate mental health care.

When considered together, this circumstantial evidence demonstrates disputed factual issues regarding Defendant's subjective awareness of and deliberate indifference to Plaintiff's serious medical needs. These issues need to be tried rather than resolved on summary judgment. Accordingly, I am denying Defendant's motion for summary judgment.

## CONCLUSION

Both Defendant's motion to strike and Plaintiff's motion to strike are granted in part and denied in part. Because there are genuine issues of material fact that can only be resolved at trial, Defendant's motion for summary judgment is denied.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: September 16, 2015